UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAM JONES

                             Petitioner,                    Case Number: 2:07-CV-13376

v.                                            HON. GEORGE CARAM STEEH

KENNETH ROMANOWSKI,

                            Respondent.

_____/

**OPINION AND ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS
AND DENYING CERTIFICATE OF APPEALABILITY**

Petitioner Sam Jones filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. §
2254.  Jones is a state prisoner in the custody of the Michigan Department of Corrections
pursuant to a second-degree murder conviction.  He argues that his conviction was obtained in
violation of his constitutional rights because he received ineffective assistance of trial and
appellate counsel, the prosecutor presented knowingly false testimony, and newly-discovered
evidence shows a *Brady* violation.  Respondent argues that the claims are procedurally defaulted
and/or meritless.  The Court finds that habeas relief is not warranted and denies the petition.

**I.  Facts**

Petitioner's conviction arises from the shooting death of Shemika Rogers on December
15, 1999.  The prosecutor's theory was that Petitioner assisted co-defendant Cornelius Brown in
a plan to ambush Kevin Kennard, which led to the mistaken shooting of Rogers.  The
prosecution presented evidence that Petitioner's brother owed Kennard $1,600 for cocaine

supplied by Kennard and that Petitioner became involved because Kennard demanded payment from Petitioner for his brother's debt.

Kevin Kennard testified under a grant of immunity.  He testified that he, Shemika Rogers, and Rogers' four-year-old son, Darius, lived together in an apartment at the Homestead Apartments in East Lansing at the time of the shooting.  He testified that Petitioner's brother, Mike Jones, owed him $1,600 for two ounces of cocaine.  Kennard had tried to collect the money owed to him dozens of times before October 1999.  Sometime in October 1999, Kennard approached Petitioner about the drug debt.  Petitioner indicated that he would have his brother contact Kennard.  Approximately one week later, Kennard tracked Petitioner down at Patrick Gentry's house in an attempt to collect the money owed him.  Kennard was armed with a handgun.  While Kennard and Gentry argued, Petitioner ran from the house.  Eventually, Gentry pulled a weapon and fired several shots at Kennard.  Kennard escaped uninjured.  Kennard testified that later that evening Petitioner telephoned him and said he was going to kill Kennard the next time he saw him.

On the day of the shooting, Kennard picked Shemika Rogers up from her job at approximately 7:15 p.m.  Darius was in the vehicle with them as well.  Kennard drove to the apartment complex where they lived.  He parked and exited the vehicle, leaving the engine running, to go inside to use the restroom.  He planned to then drive Rogers to a friend's house. When he returned to his vehicle he saw bullet holes and Shemika slumped in the front seat.  He retreated back into the apartment building because he feared a gunman might still be outside.

Darius testified that he was sitting in the backseat of the vehicle when his mother was shot.  He saw three men approach the vehicle.  One asked where Kevin was.

-2-

Patrick Gentry testified that he lived with Amber Speed, Darrian Mendenhall and Petitioner in October 1999.  He was aware of Mike Jones' unpaid debt to Kennard and Kennard's attempt to collect the debt.  On December 15, 1999, Gentry, Mendenhall and Amber Speed were driving home when they received a call informing them that Kennard had been spotted at Arby's driving a Range Rover.  Gentry drove the vehicle toward where the Range Rover had been seen.  He then noticed a Range Rover parked in the Homestead Apartments parking lot.  Gentry parked his vehicle about nine or ten spaces from the Range Rover.  He then saw Petitioner sitting inside a parked gray Ford Taurus about five spaces from the Range Rover. Gentry and Mendenhall approached the Range Rover and asked Shemika where Kennard was. Gentry then yelled to Petitioner, who was standing outside the Taurus, that Kennard was not in the vehicle.  At about the same time, Gentry heard gunshots.  He and Mendenhall ran to their car and sped away.  As Gentry was running, he saw co-defendant Brown running toward Petitioner's vehicle.

Gentry, Mendenhall, and Speed headed to their home.  Along the way, they stopped at a gas station, where they saw Petitioner and Brown.  They all then went to Gentry's home and watched television.  While there, Brown lamented his bad aim and said he should have ensured that Shemika was dead before he left.

Amber Speed testified that she and Patrick Gentry lived together.  He picked her up from work on the day of the shooting at about 6:30 p.m.  Mendenhall was also in the vehicle.  They were headed home, when Gentry or Mendenhall received a phone call that caused them to turn around and head toward Lansing.  They then looked for and spotted a silver SUV and began following it.  While they were driving, Mendenhall relayed their location to someone on his cell

-3-

phone.  They followed the vehicle to an apartment complex.  Gentry parked the vehicle and he

and Mendenhall exited the vehicle.  Speed got into the driver's seat of Gentry's vehicle.  She

then heard shouting.  She pulled the vehicle around to where Gentry and Mendenhall were

standing.  As she was driving the vehicle, she saw Brown holding a gun with a red beam on it.

She then heard a bang and saw a flash.  Gentry and Mendenhall jumped into the vehicle and she

sped off.

Heather Frazier testified that she was Brown's girlfriend.  On the day of the shooting,

she, Brown and Petitioner were at Brown's home.  Petitioner received a walkie-talkie message

letting him know that his target was at Arby's.  Petitioner grabbed a handgun and left.  Brown

took a gun with a laser sight and also exited the residence.

Petitioner called no witnesses and did not testify in his own defense.

## II.  Procedural History

Petitioner was convicted by a jury in Ingham County Circuit Court of second-degree

murder as an aider and abettor.  On September 19, 2001, he was sentenced to life in prison.

Petitioner filed an appeal of right in the Michigan Court of Appeals.  He raised these

claims:

I.  Defendant was deprived of his Ams. V and XIV rights of due process when the court unfairly allowed the issue of drugs into evidence.

II.  Defendant was deprived of his V and XIV rights of due process when the prosecutor failed to afford defense counsel discovery until trial.

III.  Defendant was deprived of his V and XIV rights of due process when the trial court denied his motion for a directed verdict.

IV.  Defendant was deprived of his V and XIV rights of due process when the prosecution presented testimony at the preliminary examination which it  knew or should have known to be false.

-4-

The Michigan Court of Appeals affirmed the conviction. *People v. Jones*, No. 237881, 2003 WL 22138015 (Mich. Ct. App. Sept. 16, 2003).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. He raised the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Jones*, 469 Mich. 1016 (Mich. Feb. 27, 2004).

Petitioner filed a motion for relief from judgment in the trial court. He raised these claims:

    I.      Defendant-appellate was deprived of the effective assistance of counsel at trial.

    II.    Defendant-appellate is entitled to a new trial where the prosecution knowingly presented perjured testimony that key witnesses were not offered immunity as early as the preliminary examination.

    III.   Defendant-appellate was denied effective assistance of appellate counsel and can thereby demonstrate cause and prejudice for failing to raise the preceding claims on direct appeal.

The trial court denied the motion. *People v. Jones*, No. 01-76756 (Ingham County Cir. Ct. June 22, 2005).

Petitioner's applications for leave to appeal the denial were denied by the Michigan Court of Appeals, *People v. Jones*, No. 270282 (Mich. Ct. App. Nov. 9, 2006), and the Michigan Supreme Court. *People v. Jones*, 478 Mich. 924 (Mich. June 26, 2007).

Petitioner then filed a petition for writ of habeas corpus in this Court, raising these claims:

    I.      Whether Petitioner Jones was deprived of his Sixth Amendment constitutional right to effective assistance of counsel at trial guaranteed him by the US Constitution where counsel failed to protect the rights of Petitioner as to the following:

    A.      Counsel's performance was deficient and prejudicial where counsel failed to perform a reasonable investigation by failing to interview and solicit testimony of res gestae witness Toliver Braggs who observed crucial evidence which would have undermined the prosecution's theory of aiding and abetting in the crime;

    B.      Defense counsel was constitutionally ineffective for failing to request a mistrial or a continuation when the prosecutor withheld discovery material until trial;

    C.      Defense counsel was ineffective where he denied Petitioner effective assistance of counsel and confrontation where he failed to move for an evidentiary hearing to address the prosecutor's knowing presentation of perjured testimony and querying of witnesses with leading questions amounting to prosecutorial testimony depriving Petitioner of his right to confront and cross-examine him;

    D.      Defense counsel's performance was deficient and prejudicial where counsel failed to sufficiently investigate and prepare so as to completely challenge the firearm-ballistics evidence, failed to effectively cross-examine the expert, and failed to obtain an independent firearms-ballistics expert to rebut the state expert's erroneous opinion testimony; and

    E.      Counsel's cumulative deficient performance prejudiced the defense and deprived Petitioner of a fundamentally fair trial.

II.    Is Petitioner entitled to a new trial where the prosecutor presented perjured testimony that key witnesses were not offered immunity as early as the preliminary examination?

III.    Was Petitioner denied effective assistance of appellate counsel thereby demonstrating cause and prejudice for failing to present the claims asserted on direct appeal of right?

At petitioner's request, the Court stayed these proceedings so that he could return to state court to raise a claim that newly-discovered evidence showed that the prosecutor withheld potentially exculpatory evidence.

Petitioner filed a second motion for relief from judgment in the trial court. That motion was denied, *People v. Jones*, No. 01-76756 (Ingham County Cir. Ct. March 13, 2009), as were

his subsequent applications for leave to appeal in the Michigan Court of Appeals, *People v. Jones*, No. 296946 (Mich. Ct. App. May 24, 2010); and the Michigan Supreme Court, *People v. Jones*, 488 Mich. 1045 (March 8, 2011).

Petitioner then asked the Court to reopen these proceedings and for permission to amend his petition to include the claim that the prosecutor withheld potentially exculpatory evidence. The Court granted the requests. Respondent has now filed an answer responding to the amended petition.

### III. Standard

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S.

-7-

12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the

writ if the state court identifies the correct governing legal principle from [the Supreme] Court

but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539

U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal

court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state

court's decision must have been more than incorrect or erroneous. The state court's application

must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted);

*see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 789 (2011),

*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view

that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems,

not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining

habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the

claim being presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether

the state court's decision comports with clearly established federal law as determined by the

Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412.

Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even

require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV. Discussion

### A. Ineffective Assistance of Counsel Claim

Petitioner asserts first that his trial attorney rendered ineffective assistance in violation of his constitutional right to counsel. Petitioner claims that counsel was ineffective in the following ways: (i) failing to interview and solicit the testimony of Toliver Braggs who would have rebutted the prosecution's aiding and abetting theory; (ii) failing to request a mistrial or continuation when the prosecutor withheld discovery material until trial; (iii) failing to move for an evidentiary hearing to address prosecutor's knowing presentation of false testimony and use of leading questions; (iv) failing to investigate and rebut ballistics evidence; and (v) cumulative effect of errors denied Petitioner a fundamentally fair trial.

Respondent argues that Petitioner's ineffective assistance of counsel claims are procedurally defaulted. A court may proceed to the merits of a claim rather than undertake a

procedural-default analysis where doing so presents a more straightforward analysis.  *See Arias v. Hudson*, 589 F.3d 315, 316 (6th Cir. 2009) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  In this case, it is more straightforward to address the merits of the ineffective assistance of counsel claims.

In *Strickland v. Washington*, the United States Supreme Court set forth a two-part test to determine whether a habeas petitioner has received the ineffective assistance of counsel.  466 U.S. 668 (1984).  First, a petitioner must show that his counsel's performance was deficient.  *Id.* at 687.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  Second, the petitioner must show "that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.*

To satisfy the performance part of *Strickland*, a habeas petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Id.* at 690.  On habeas review, the court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.  The burden is on the petitioner to overcome the presumption that the challenged action was sound trial strategy.  *Id.* at 689.

To satisfy the prejudice part of the *Strickland* test, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  To be a reasonable probability, it must be sufficient to undermine

confidence in the outcome. *Id*. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693).

"The standards created by *Strickland* and §2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id*. at 788 (internal and end citations omitted). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

1.      Failure to Interview or Call Toliver Braggs

First, Petitioner argues that his defense attorney was ineffective in failing to interview and call Toliver Braggs. Petitioner argues that Braggs would have established that Petitioner did not drive Cornelius Brown to the scene of the crime. In an affidavit, Braggs attests that he spoke briefly with Petitioner and Brown on the day of the shooting. And, that shortly after that, the two left in separate cars. Braggs further attests that no one contacted him about testifying at Petitioner's trial.

The trial court, the last state court to issue a reasoned opinion regarding this claim, denied the exculpatory nature of Braggs testimony and found no ineffectiveness:

> This Court does not find that trial counsel's failure to interview Toliver Bragg[s] amounts to ineffective assistance of counsel. An affidavit from Mr. Bragg[s], included in Defendant's motion, simply states that Mr. Bragg[s] witnessed Defendant and Cornelius Brown (co-defendant in the above-entitled matter) leave in separate vehicles. Mr. Bragg[s] does not claim to have personal knowledge as to what the Defendant and Mr. Brown did after leaving Mr. Brown's residence. The record also indicates Mr. Bragg[s] disregarded a subpoena to appear at trial. .

-11-

> . . This Court is not persuaded that Mr. Braggs' limited knowledge of the case
> prejudiced the Defendant by affecting the outcome of his case. . . .

*People v. Jones*, No. 01-76756, slip op. at 4.

Braggs' statement that Petitioner and Brown left Brown's residence in separate cars is not inconsistent with the prosecution's theory of the case. It, therefore, would have been reasonable for counsel to conclude that Braggs' testimony would not aid the defense and counsel's failure to elicit this testimony did not prejudice the defense. Accordingly, the state court's application of *Strickland* was not unreasonable.

2.     Failing to Request a Mistrial or Continuance

Second, Petitioner argues that counsel was ineffective in failing to move for a mistrial or request a continuance based upon discovery violations. Specifically, Petitioner alleges that the prosecutor failed to produce two rolls of film, an updated crime scene investigator report, a transcript of an interview with the victim's son, and a taped interview of Kevin Kennard. Additionally, Petitioner argues that he received late notice of immunity agreements with prosecution witnesses Kevin Kennard, Patrick Gentry, Darrian Mendenall, and Amber Speed.

These issues were raised on direct review in state court as discovery violations, not as claims of ineffective assistance of counsel. The Michigan Court of Appeals found no ground for relief because Petitioner failed to establish prejudice. First, with respect to the immunity agreements, the state court reasoned:

> Defendant asserts that the prosecutor improperly withheld its intention to arrange
> for grants of immunity for these witnesses, and that this prejudiced the ability of
> the defense to cross-examine these witnesses effectively. We disagree.
>
> The prosecutor requested immunity for Kennard during the course of jury
> selection. At that time, defense counsel expressed no concern about the timing of
> this development, or its disclosure, stating only that

-12-

> as far as to cross or to examine Mr. Kennard, the ... only thing I
> would ask at this point, if there has been communications between
> Mr. Kennard and any law enforcement agency, we just want to
> make sure that we have all of the discoverable information that
> may have occurred.  I know that there were statements made by
> Mr. Kennard earlier, but it sounds as if there may have been more
> made later, and I don't believe we have any of those.

Defense counsel then expressed some concern over obtaining all discoverable
materials, but none over the grant of immunity itself or how and when such
machinations came to the attention of the defense.  Then, when Kennard testified
at trial eight days later, defendant's attorney did not cross-examine him
concerning the grant of immunity, but codefendant Brown's attorney pointedly did
so.  Not only did the defense complain of no impairment in its ability to
cross-examine Kennard because of the immunity agreement struck several days
earlier, but defendant on appeal suggests only generally that such a concern
hampered the defense.  The lack of an objection below, coupled with the lack of
specific argument on appeal, leaves this Court with no basis for granting relief . . .

The immunity agreements for Gentry, Mendenhall, and Speed, were proposed to
the trial court, and brought to the attention of the defense, only several days into
trial.  Counsel for codefendant Brown objected strenuously to having to proceed
in the face of this late-breaking development, and defendant's attorney joined in
the objection.  Neither defense attorney asked for a mistrial, but Brown's attorney
spoke of needing time to prepare to make use of possible differences between
what these witnesses would say at trial and what they said at the preliminary
examination.  The prosecutor stated that he and Gentry's lawyer had discussed
immunity at the preliminary examination, but admitted that the transcripts of that
proceeding did not reflect any such discussion, adding, "I'm conceding some
error here".  The trial court recognized that the defense objections concerned not
the immunity itself, but the last-minute disclosure of such agreements, and ruled
that "the witnesses who are to be given immunity and which defense had no prior
notice will not testify until tomorrow."  Neither defense attorney expressed any
dissatisfaction with this remedy.

As with the argument concerning Kendall's immunity agreement, coupled with
the lack of a stated objection to the trial court's handling of the matter below,
defendant now alleges prejudice only generally, with no specific argument to
show how having more than one additional day to prepare for cross-examination
would have improved his position.  In any event, all three witnesses were
effectively cross-examined regarding their immunity agreements, or
inconsistencies in past and present testimony.

-13-

> We conclude that the trial court properly managed the immunity issues, and that defendant suffered no prejudice in the matter.

*Jones*, 2003 WL 22138015 at \*3-4.

Although the claim concerning the late disclosure of the immunity agreements is framed in this habeas proceeding as an ineffective assistance of counsel claim, the central issue the Court must consider is that considered by the state court on direct review – prejudice. Petitioner is unable to identify any way in which he was prejudiced by the late disclosure. His arguments reference the inability to effectively prepare for cross-examination of these witnesses, but he offers no specific ways in which cross-examination was impeded or would have proceeded differently but for the late disclosure. The Court finds that Petitioner has failed to demonstrate prejudice and, therefore, fails to show his attorney was ineffective.

The Michigan Court of Appeals also held that Petitioner's claims of additional discovery violations did not provide grounds for reversal because no prejudice resulted. In his habeas petition, other than a conclusory allegation, Petitioner fails to provide any specific argument as to how he was prejudiced by these late disclosures. Accordingly, he fails to establish that his counsel was ineffective in failing to request a mistrial or a continuance.

Finally, to the extent that Petitioner claims a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), the claim is meritless. Suppression by the prosecution of evidence favorable to the defendant upon request violates due process where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Id.* at 87. But the evidence at issue here was disclosed to Petitioner during trial. "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose. *United States v. Ross,* 703 F.3d 856, 881 (6th Cir. 2012) (internal quotation omitted).

-14-

If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant can demonstrate prejudice. *Id.* at 881-82. The duty to disclose does not hinge on the usefulness of the material to pretrial preparation. "Such a standard would 'necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense.'" *United States v. Bencs*, 28 F.3d 555, 560 n. 5 (quoting *United States v. Agurs*, 427 U.S. 97, 112 n. 20 (1976)). Petitioner has not shown he was prejudiced by the late disclosure in this case. Moreover, the petitioner has not shown that any of this evidence was exculpatory. Habeas relief is denied on this claim.

### 3.      Evidentiary Hearing and Leading Questions

Next, Petitioner argues that his attorney was ineffective in failing to request an evidentiary hearing to explore whether the prosecutor knowingly presented false testimony and in failing to object to the prosecutor's leading questions. The trial court denied this claim in denying Petitioner's motion for relief from judgment. The trial court found no support in the record that would have supported a motion for an evidentiary hearing. The trial court also found that the prosecutor's questions, even if leading, did not implicate the fairness of the proceeding. This Court's review of the record shows that counsel was an active advocate for his client, lodging objections and vigorously cross-examining witnesses. Counsel is not required to raise every possible objection. *Watkins v. Lafler*, 517 F. App'x 488, 496 (6th Cir. 2013) ("Silence can constitute trial strategy."). Petitioner establishes no prejudice from the prosecutor's form of questions. The Court finds the state court's holding a reasonable application of *Strickland*.

### 4.      Ballistics Evidence

-15-

Fourth, Petitioner argues that defense counsel should have countered the prosecution's ballistics expert with a defense ballistics expert witness. "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Richter*, 131 S. Ct. at 791. Often, "cross-examination will be sufficient to expose defects in an expert's presentation." *Id.* Petitioner fails to show that a different ballistics expert would have called into question the prosecution witness's testimony. The ballistics testimony was not the centerpiece of the prosecution's case and, even if a defense ballistics expert offered contrary testimony, there is no reasonable probability that the result of the proceeding would have been different. Habeas relief is denied on this claim.

### 5. Cumulative Effect of Trial Counsel's Alleged Errors

Lastly, Petitioner asserts that he is entitled to habeas relief based upon the cumulative effect of counsel's ineffectiveness. Petitioner cannot establish that the cumulative effect of counsel's errors denied him his right to the effective assistance of counsel because he failed to demonstrate a single instance of counsel's ineffectiveness. *See Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006). Habeas relief is unwarranted.

### B. Prosecutorial Misconduct Claims

Petitioner next argues that the prosecutor committed misconduct by knowingly presenting false testimony at the preliminary examination from witnesses Gentry, Mendenhall, and Speed, and by withholding evidence regarding witness Amber Speed's eye condition.

A false-testimony claim falls under the *Brady* disclosure doctrine, which requires the government to disclose evidence favorable to a defendant if it is "material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194 (1963). The "contours of [a

false-testimony] claim were predominantly shaped by two Supreme Court cases: *Napue v. Illinois*, 360 U.S. 264, 269–72, and *Giglio v. United States*, 405 U.S. 150, 153–54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)." *Brooks v. Tenn.*, 626 F.3d 878, 894 (6th Cir. 2010).

The Sixth Circuit has developed a three-part test for determining if the prosecution has committed a *Brady–Napue–Giglio* violation:

> The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.

*Id.* at 894-95, *quoting Coe v. Bell*, 161 F.3d 320, 343 (6th Cir.1998).

A false statement is material under this standard, and "[a] new trial is required[,] if the false testimony could in any reasonable likelihood have affected the judgment of the jury." *Giglio*, 405 U.S. at 154, *quoting Napue*, 360 U.S. at 271.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *Parker v. Matthews*, __ U.S.__, 132 S. Ct. 2148, 2153, (June 11, 2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). This Court must ask whether the Michigan Court of Appeals' decision denying Petitioner's prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

-17-

disagreement.'" *Parker*, __ U.S. at __, 132 S. Ct. at 2155, (quoting *Harrington*, 562 U.S. at __,

131 S. Ct. at 786-87.

The Michigan Court of Appeals held that, while the witnesses' testimony differed in

some respects between the preliminary examination and trial, Petitioner failed to show that the

prosecutor knowingly presented false testimony at the preliminary examination. The Michigan

Court of Appeals reasoned:

> [D]efendant cites no authority for the proposition that a prosecutor must
> disbelieve the prosecutor's own witnesses, or is charged with prior knowledge
> whenever a prosecution witness' trial testimony ultimately differs from what that
> witness offered in earlier proceedings. Defendant points out that during the
> course of trial the prosecutor sought immunity agreements for the three witnesses
> for the obvious purpose of improving his chances of eliciting useful testimony
> from them. But that is not the same as saying that the prosecutor knew, or
> otherwise should have concluded, that these witnesses were lying at the
> preliminary examination. Because defendant fails to show such misconduct on
> the prosecutor's part, this issue is without merit.

*Jones,* 2003 WL 22138015 at *9.

Petitioner simply has not shown that the prosecutor knowingly presented false testimony.

Thus, the Michigan Court of Appeals' finding that the prosecution did not present false evidence

was reasonable.

Petitioner also argues that the prosecutor concealed exculpatory evidence because the

prosecutor failed to disclose to the defense that Amber Speed suffered from amblyopia, a

condition that he claims compromises her night vision.

To find a *Brady* violation, not only must the evidence be suppressed, but the suppressed

evidence must be material and favorable to the accused. *Elmore v. Foltz*, 768 F.2d 773, 777 (6th

Cir. 1985). Favorable evidence is material "if there is a reasonable probability that, had the

evidence been disclosed to the defense, the result of the proceeding would have been different."

*United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 432-36 (1995). Material evidence is that which is "so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce." *United States v. Clark*, 988 F.2d 1459, 1467 (6th Cir. 1993). The duty to disclose favorable evidence includes the duty to disclose favorable impeachment evidence. *Bagley, supra*; *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). Thus, to demonstrate a Brady violation, (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that evidence must have been suppressed by the State, either willfully or inadvertently;" and (3) "prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

The state court found no reasonable probability that, had Speed's eye condition been disclosed, the result of the proceeding would have been different. The state courts' denial of relief on this claim is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner has not met his burden of establishing a *Brady* violation. Petitioner has failed to show that Speed's eye condition was favorable or exculpatory information. In her affidavit, Speed states that her eye condition had no impact on her ability to identify Cornelius Brown. In addition, where undisclosed evidence "merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material." *Jefferson v. United States*, ___ F.3d ___, 2013 WL 4838793, *10 (6th Cir. Sept. 12, 2013) (internal quotation omitted). Speed's credibility was substantially impeached on cross-examination. For example, she admitted lying to police in a December 1999 statement, she testified pursuant to an immunity agreement, and

she only agreed to testify after her fiancée, Gentry, was arrested.  Given the extent to which

Speed's credibility was attacked at trial, the Court finds that the additional basis on which to

attack her credibility was not material.  Habeas relief is denied on this claim.

## C.  Ineffective Assistance of Appellate Counsel Claim

Finally, Petitioner alleges ineffective assistance of appellate counsel as cause to excuse

his procedural default.  As discussed, the Court determined that the interests of judicial economy

were best served by the Court's addressing the merits of the petitioner's defaulted claims.

Nevertheless, the Court will briefly address the petitioner's ineffective assistance of appellate

counsel claim.

The Supreme Court has held that a petitioner does not have a constitutional right to have

appellate counsel raise every non-frivolous issue on appeal.  *Jones v. Barnes*, 463 U.S. 745, 754

(1983).  The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on
> appointed counsel a duty to raise every "colorable" claim suggested by a client
> would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in
> the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.  Strategic and tactical choices regarding which issues to pursue on appeal are

"properly left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d

56, 59 (6th Cir. 1990).

Petitioner claims that appellate counsel was ineffective in failing to raise on direct review

the claims Petitioner raised on collateral review and in his habeas petition.  The petitioner has

failed to show that any of these claims were potentially meritorious.  Therefore, Petitioner cannot

show that his appellate attorney was ineffective for failing to raise them on direct appeal.

## V.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrant relief.  Therefore, the Court denies a certificate of appealability.

## VI.  Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus and a certificate of appealability are DENIED.

SO ORDERED.

Dated:  October 9, 2013

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 9, 2013, by electronic and/or ordinary mail and also on
Sam Jones #231271, Saginaw Correctional Facility,
9625 Pierce Road, Freeland, MI  48623.

s/Barbara Radke
Deputy Clerk

-21-